

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-5868

Re: Construction of Article 7047b
as applied to a plant extract-
ing liquid hydrocarbons from
gas by means of a series of
separators, and returning the
remaining gas to the same
producing formation under-
lying the land from which the
gas is produced.

Your request for opinion dated February 15, 1944, has
been considered by this department. We quote from your letter
as follows:

"There is now in operation in this State a
concern which produces gas, runs the gas through
a series of separators, thereby extracting liquid
hydrocarbons, the remaining gas then being run to
compressors which boost the pressure to such an
extent that the gas is returned to the same gas
producing formation. This operation is described
as a 'Recycling Plant' in the 'Oil and Gas Journal',
June 25, 1942, page 113, and is operating under a
'Recycling Plant Permit' issued by the Texas Rail-
road Commission.

"I shall appreciate your official opinion as
to how to compute the tax on this operation,
specifically:

"Are the liquids extracted properly tax-
able at three-fifths of the volume recovered at
5.2%, or at 100% of the liquids at 4 1/8%."

The pertinent portions of Article 7047b, V. A. C. S. (Acts
1941, 47th Leg., p. 269, Ch. 184, Art. II) are:

(1)". . . Notwithstanding any other provision herein to the contrary, where gas is processed for its liquid hydrocarbon content and the residue gas is returned by recycling methods to the same gas-producing formation underlying the land from which the gas is produced, the taxable value of such gas shall be three fifths (3/5) of the gross value of all products extracted, separated and saved from such gas."

(2)". . . All liquid hydrocarbons that are recovered from gas by means of a separator or by other nonmechanical methods shall be taxed at the same rate as oil as levied by Article I of this Act." (Article 7057a; V. A. C. S.).

We will consider first a definition of the term "recycling". This process is relatively new in the oil and gas industry -- the first recycling plant was put in operation in 1938 -- and we are unable to find any judicial definition of the term. The following definitions appear in the trade journals:

"Production of high-pressure gas, pressure reduction and separation of condensate, followed by compression and injection of the stripped gas into the same reservoir from which it was produced is term 'recycling'". (Oil & Gas Journal, Oct. 5, 1939, p. 36).

"Cycling, sometimes referred to as recycling, is the primary recovery operation by which 'condensate' commonly called 'distillate' is separated or extracted from high-pressure gas and the residue gas then compressed and returned to the formation." (Oil & Gas Journal, April 13, 1944, p. 296).

"Natural-gas cycling or recycling, consists of producing natural gas which exists in a vaporous state in the reservoir, extracting certain liquefiable hydrocarbons, and returning the denuded gas to the same reservoir from which it was produced." (Oil & Gas Journal, April 20, 1944, p. 46).

There are three main types of processing plants used in recycling. The first involved only simple separation, utilizing the principles of retrograde condensation to extract the condensate by reduction in pressure. The second type involves the addition of some means of cooling the gas. In the retrograde range, the amount of condensation at a given pressure increases with a decrease in temperature so extraction efficiencies were improved by installing plants involving simple separation with the addition of a refrigeration cycle to reduce the temperature of the wet gas ahead of the separator. The third type of plant utilizes high-pressure absorption to extract the condensate. (Oil & Gas Journal, April 13, 1944, pp. 295, et seq.)

It will be noted that, whatever type of process is used, the primary objective of a true recycling plant is the recovery of the liquid hydrocarbons, the most valuable content of the natural gas, and the return of the dry gas remaining to the formation from which it was drawn. This dry gas, from which the liquids have been stripped, is "residue gas" as referred to in the part of Article 7047b first above quoted. This is consistent with the definitions of "residue gas" given by the courts. See Tidewater Associated Oil Co. v. Clements, 123 S. W. (2d) 780; Utilities Production Corporation v. Carter Oil Company (10th Circuit), 72 F (2d) 655.

In this regard, it is important that the Texas Railroad Commission considers the plant in question a recycling plant, and has issued it a permit as such.

In the production and utilization of gas as such, the gas is run through a field separator at line pressure before being run into the pipe line for transportation to the point of use. Such field separator removes certain of the liquid hydrocarbons. If these liquids are not removed, they condensate in the line with changes of temperature, etc., and impede the flow of gas through the line. Also, in the construction of gas pipe lines, outlets or "traps" are placed at low points in the line for the removal of liquids which may form in the line. Undoubtedly these are the liquid hydrocarbons referred to in the second quoted part of Article 7047b as "recovered from gas by means of a separator or by other nonmechanical methods."

You are therefore advised that if the primary purpose of the operation is the removal of the liquid hydrocarbons from the gas, and the residue or dry gas is returned to the same formation underlying the land from which the gas was produced, the taxable value of the gas is three fifths of the gross value of all products

Honorable Geo. H. Sheppard, p. 4

extracted, separated and saved, as this measure is interpreted by the Supreme Court in W. R. Davis, Inc. vs. State, ___ S. W. (2d)____. (Not yet reported). (Rule 5, Opinion No. O-3516). Such gas is "processed for its liquid hydrocarbon content" within the contemplation of Article 7047b. If the recovery of the liquid hydrocarbons is merely incidental to the production and utilization of the gas as such, and the liquids are recovered by means of a separator or by other nonmechanical methods, these liquids are taxable at the same rate as oil, i. e., at 2 1/8%. (Rule 7, Opinion No. O-3516).

Trusting that this fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Arthur L. Moller
Arthur L. Moller
Assistant

ALM:bb



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN